IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|                                          |   |                               |
|------------------------------------------|---|-------------------------------|
|                                          | * |                               |
| **AUSTIN A. LAWSON,**                    | * |                               |
| **Plaintiff,**                           | * |                               |
| **v.**                                   | * | **Civil Action No.: CBD-13-0728** |
|                                          | * |                               |
| **CAROLYN W. COLVIN,**                   | * |                               |
| **Acting Commissioner,**                 |   |                               |
| **Social Security Administration,**      | * |                               |
| **Defendant.**                           | * |                               |

**\*\*\*\*\*\***

**<u>MEMORANDUM OPINION</u>**

Austin A. Lawson ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claims for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434.  Before the Court is Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 21). The Court has reviewed the motion, related memoranda, and applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below, the Court hereby GRANTS Defendant's Motion.

I.     **Procedural Background**

Plaintiff filed his application for DIB on August 27, 2009 and claimed disability from the onset date of October 2, 2008 through the date last insured of March 31, 2009, due to a cerebral hemorrhage.  R. 84, 88.  The Commissioner denied Plaintiff's claim on first review on January 22, 2010 and upon reconsideration on December 14, 2010.  R. 28–30, 32–35.  Plaintiff appeared and testified at a hearing held on December 13, 2011 before an Administrative Law Judge

("ALJ").  R. 270–301.  On January 26, 2012, the ALJ issued a written decision concluding

Plaintiff was not entitled to DIB payments.  R. 15–24.  The Appeals Council denied Plaintiff's

request for review on February 6, 2013, making the ALJ's decision final and appealable.  R. 5–7.

## II.     Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ

"with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2012).  The Court

must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the

correct law.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive . . . .");  s*ee also Russell v.*

*Commissioner of Soc. Sec*., 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Substantial

evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation

marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there

is evidence to justify a refusal to direct a verdict were the case before a jury, then there is

substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court

"determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his

decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at

345.  The ALJ, not the Court, has the responsibility to make findings of fact and resolve

evidentiary conflicts.  *Hays*, 907 F.2d at 1456.  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Court shall find a person legally disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a) (2014).  The Code of Federal Regulations outlines a sequential, five-step process that the Commissioner must follow to determine if a plaintiff meets this definition:

Step 1)   Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is doing such activity, he is not disabled.  If he is not doing such activity, proceed to step two.

Step 2)   Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If he does not have such impairment or combination of impairments, he is not disabled.  If he does meet these requirements, proceed to step three.

Step 3)   Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement."  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If he does have such impairment, he is disabled.  If he does not, proceed to step four.

Step 4)   Determine whether the plaintiff retains the "residual functional capacity" to perform "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If he can perform such work, he is not disabled.  If he cannot, proceed to step five.

Step 5)   Determine whether the plaintiff can perform other work, considering his residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If he can perform other work, he is not disabled.  If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and

Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## III.    Analysis

In the ALJ's January 26, 2012 decision, he evaluated Plaintiff's claims using the five-step

sequential process set forth in 20 C.F.R. § 404.1520.  At the first step, the ALJ determined that

Plaintiff did not engage in substantial gainful activity during the claim period from the alleged

onset date through the date last insured.  R. 17.  At the second step, the ALJ determined that

Plaintiff had severe impairments consisting of neck, back, and knee disorders.  R. 17.  At the

third step, the ALJ determined that Plaintiff "did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments."  R. 20.

Before proceeding to step four of the sequential evaluation, the ALJ determined that Plaintiff

retained the residual functional capacity ("RFC") to perform the full range of light work.  R. 21.

In addition, Plaintiff could

> occasionally (i.e., one third of the time) climb, balance, bend, stoop, kneel,
> crouch, squat, and crawl.  He had to avoid concentrated exposure to hazards, such
> as moving machinery and unprotected heights.  There was a moderate impact on
> his ability to keep up a pace, due to pain and the side effects of medication, but
> the resulting limitation was experienced much less than occasionally, such that
> interference with his ability to do work-related tasks was limited to less than 20%
> in an eight-hour day.

*Id.*  At step four, the ALJ compared the physical and mental demands of Plaintiff's past relevant

work as a billing supervisor, payment representative, bookkeeper, driver's helper, and

photographer with his assessed RFC.  *Id.*  Relying on the testimony of a vocational expert

("VE"), the ALJ found that Plaintiff was not capable of performing all of the requirements of his

past relevant work.  *Id.*  At the fifth step, the ALJ considered Plaintiff's RFC, age, education,

work experience, and residual functional capacity to determine that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," such as inspector, final assembler, document preparer, and addresser.  R. 22–23.  As a result, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from October 2, 2008, the alleged onset date, through March 31, 2009, the date last insured."  R. 23.

The Court shall review the ALJ's conclusions and determine whether they are legally correct, despite Plaintiff filing neither a motion for summary judgment nor a reply in response to Defendant's Motion.[1]  *See* 42 U.S.C. § 405(g) (allowing entry of judgment "upon the pleadings and transcript of the record").  Section 405(g), the Social Security Act's judicial review provision, does not exempt actions brought for review of Social Security claims from the operation of the Federal Rules of Civil Procedure, rather § 405(g) "prescribes that judicial review shall be by the usual type of 'civil action' brought routinely in district court."  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 699 (1979)).  Rule 56 of the Federal Rules of Civil Procedure, which allows either party to a civil action to move for summary judgment, provides for: (1) the service by at least one party of a motion for summary judgment, and notice to all parties of the motion at least ten days prior to the hearing thereon; (2) optional service of affidavits in opposition to the motion; and (3) a hearing.  *Kistner v. Califano*, 579 F.2d 1004, 1005–06 (6th Cir. 1978) (citing Fed. R. Civ. P. 56).  For the reasons set forth below, the ALJ's decision is affirmed and Defendant's Motion is granted.

---

[1] Plaintiff filed a Letter Response to Defendant's Motion for Summary Judgment, which states general disagreement with the dismissal of his case and his frustration with the administrative review process.  Pl. Letter Resp. 1 (ECF No. 25).

#### A.    ALJ Properly Determined Plaintiff's Severe Impairments that Arose During the Claim Period

At step two of the sequential analysis, the ALJ found Plaintiff had (1) several severe impairments consisting of neck, back, and knee disorders and (2) non-severe impairments consisting of subarachnoid hemorrhage, chronic headaches, and adhesive capsulitis of the right shoulder.  R. 17 & n.1.  In so finding, the ALJ explained that the non-severe impairments arose after Plaintiff's date last insured.  R. 17 n.1; *see also Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir. 2005) (recognizing that a claimant must prove that he became disabled before expiration of his insured status).

The only medical evidence from the relevant period relates to Plaintiff's emergency room treatment for neck pain after lifting a heavy fish tank on October 10, 2008.  R. 236.  Plaintiff's attending physician discharged him the same day with prescription pain medications and indicated that he could return to full physical activity in two days.  R. 201, 209.  The record suggests that Plaintiff's subarachnoid hemorrhage arose on June 25, 2009, after Plaintiff hit his head on a doorknob.  R. 176, 193.  There is no indication that Plaintiff complained of headaches before June 25, 2009, and Plaintiff testified that he believed his headaches were related to the hemorrhage he experienced after his date last insured.  R. 293.  Furthermore, Dr. Jean-Marc Voyadzis, a treating neurosurgeon, stated the etiology of Plaintiff's headaches was unclear and that Plaintiff may have been experiencing a "post-subarachnoid hemorrhage type of headache." R. 244.  The record suggests that Plaintiff's shoulder symptoms began while he was cutting heavy branches with a handsaw in July 2009, over three months after his date last insured.  R. 262.

Plaintiff, who bears the burden at step two, did not present any other evidence demonstrating that his non-severe impairments should be otherwise categorized.  *Pass*, 65 F.3d

at 1203 ("The applicant bears the burden of production and proof during the first four steps of

the inquiry.").  Therefore, the Court finds that substantial evidence supports the ALJ's

determination.

> **B.      ALJ Properly Assessed Plaintiff's RFC**

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, based on all of the

relevant evidence.  R. 21.  "RFC is an administrative assessment of the extent to which an

individual's medically determinable impairment(s), including any related symptoms, such as

pain, may cause physical or mental limitations or restrictions that may affect his capacity to do

work-related physical and mental activities."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The purpose of the ALJ's RFC assessment and his narrative description is to describe the most a

plaintiff can still do despite physical and mental limitations.  *Id.*; 20 C.F.R. §§ 404.1545(a),

416.945(a) (2014).  There is no evidence to suggest the ALJ erred in his RFC assessment.

> *1.  ALJ Explained in Narrative Form How the Evidence Supported His RFC Determination*

The ALJ dedicated over three pages to a discussion of the evidence and to how that

evidence contributed to his RFC determination.  The Social Security Rulings require ALJs to

provide a narrative discussion "describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

observations)."  SSR 96-8p, 1996 WL 374184, at *7.  The Administrative Procedure Act

("APA"), which applies to all federal administrative agencies, requires ALJs to state their

"findings and conclusions, and the reasons or basis therefor, on all the material issues of fact,

law, or discretion presented on the record."  5 U.S.C. § 557(c)(3)(A) (2012); *see also Brown ex*

*rel. McCurdy v. Apfel*, 11 F. App'x 58, 59 (4th Cir. 2001) (stating that the Social Security Act

and the APA require ALJs to "include an explanation of what evidence, or inferences drawn

therefrom, were relied on in arriving at a decision"). However, "an RFC assessment is sufficient if it includes a narrative discussion of the [plaintiff's] symptoms and medical source opinions." *Bowers v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-1445, 2013 WL 150023, at *2 (D. Md. Jan. 11, 2013) (internal quotation marks omitted).

The ALJ's RFC assessment is preceded by a thorough narrative discussion of the evidence of record. The ALJ discussed Plaintiff's medical evaluations, treatment notes, surgical procedures, work history, treatment history, hearing testimony, and written statements. R. 17–20. The ALJ also noted how the evidence supported his conclusion by citing to specific facts and exhibits in the record. *Id.* The reports suggest Plaintiff retains the RFC to perform the full range of light work, as defined in 20 C.F.R. § 404.1567, with the noted exceptions regarding pace. *See* R. 21; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2014).

### 2. *ALJ Properly Made Credibility Determination Based on the Evidence in the Record*

The ALJ properly evaluated Plaintiff's subjective complaints within the narrative discussion that preceded his RFC assessment. "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996)); *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b) (2014). In evaluating disability claims, the ALJ "is required to make credibility determinations—and therefore sometimes must make negative determinations—about allegations of pain or other nonexertional disabilities." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). The ALJ's findings about a claimant's credibility, are entitled to great weight because he has the

opportunity to observe the claimant's demeanor.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

The ALJ explained in detail why he determined Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, and that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not fully credible.  R. 19–20.  The record reflected very little evidence of limitation prior to Plaintiff's date last insured of March 31, 2009.  *Id.*  The ALJ noted that Plaintiff's October 2008 cervical spine imaging showed only degenerative joint and disc disease, that his attending physician indicated he could return to work after two days, and that the record does not reflect Plaintiff sought further treatment for his neck impairment.  R. 20.  The ALJ also noted that, during the relevant period, Plaintiff engaged in a wide range of activities, including household chores, cooking, driving, and computer use.  R. 19–20.

Though a more thorough analysis may be required in some cases, the record neither suggests that additional discussion may have produced a different result nor that any medical evidence exists which might demonstrate the ALJ's analysis was not supported by substantial evidence.  Thus, it appears that the ALJ did not err, and if he did, the error was harmless.  *See Thornsberry v. Astrue*, No. 4:08-4075-HMH-TER, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) (finding that "while the ALJ could have been more explicit" in his discussion of the combined effect of the plaintiff's multiple impairments, his overall findings adequately evaluated the plaintiff's impairments, and thus any error in failing to use explicit language was "harmless"); *Robinson v. Astrue*, No. 2:10-185-DCN, 2011 WL 4368396, at *3–5 (D.S.C. Sept.19, 2011);  *Williams v. Astrue*, No. 4:10-CV-2966-TER, 2012 WL 694038, at *6 (D.S.C. Mar. 5, 2012).

### 3. *ALJ Attributed Appropriate Weight to Treating Physician Evidence*

Within the narrative discussion that preceded his RFC assessment, the ALJ also evaluated

the opinion evidence from Dr. Stephen Webber, a treating physician, and Dr. S. Rudin, a State

agency medical consultant.  R. 18–19.  To determine the weight assigned to medical opinions,

the ALJ considers six factors: (1) the examining relationship between the source and the

claimant; (2) the length, nature, and extent of the treatment relationship between the source and

the claimant; (3) the supportability of the source's opinions; (4) the consistency of the source's

opinions with the record as a whole; (5) any specialized expertise of the source; and (6) other

factors which the claimant may bring to the Commissioner's attention.  20 C.F.R. §§

404.1527(c), 416.927(c) (2014).  The regulations state a preference for medical sources who

have a treatment relationship with the claimant, because they are "most able to provide a

detailed, longitudinal picture" and "may bring a unique perspective to the medical evidence."  20

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When the adjudicator does not give controlling weight

to a treating source, that decision must be justified in the notice of decision by an application of

the factors listed above.  *Id.*  For medical sources who have not examined or treated the claimant,

the adjudicator must assign weight depending on the degree to which they provide supporting

explanations for their opinions.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

In this case, the ALJ discounted Dr. Webber's opinion regarding Plaintiff's right shoulder

impairment because it related to the period after Plaintiff's date last insured.  R. 19, 262.  *See*

*Stahl v. Comm'r of Soc. Sec.*, No. JKB-09-1884, 2010 WL 1375438, at *3 (D. Md. March 26,

2010) ("It is unfortunately possible for a disability applicant's health to decline precipitously

after the date of last insured, even to the point that such individual could be considered

'disabled.'  However, that difficult circumstance does not change the validity of a determination

10

of nondisability on or before the [date last insured].”); *Kesecker v. Astrue*, No. TMD-10-3250,

2012 WL 1030460, at *2 (D. Md. March 26, 2012) (finding that any error by the ALJ in failing

to evaluate a consultative examiner’s report was harmless because the report was prepared

approximately five years after the claimant’s date last insured, and the consultative examiner did

not offer a retrospective opinion of the claimant’s limitations before the date last insured).  On

the other hand, the ALJ gave significant weight to Dr. Rudin’s opinion that the record contained

insufficient evidence to find that Plaintiff was disabled before his date last insured, because his

opinion is supported by the evidence of record.  The record reflects only one episode of medical

treatment during the claim period—for neck symptoms that were expected to improve within two

days.  R. 201, 209.  Substantial evidence supports the weight the ALJ accorded to the opinions of

Dr. Webber and Dr. Rudin.

> **C.     ALJ Properly Relied on VE Testimony for His Determination that Plaintiff is Able to Perform Other Jobs**

At step four of the sequential analysis, the ALJ found that Plaintiff “was not capable of

performing all of the requirements of his past relevant work.  R. 21.  At the fifth step of the

sequential analysis, the burden shifted to the Commissioner to establish that Plaintiff could

perform other jobs that existed in significant numbers in the national economy.  *Pass*, 65 F.3d at

1203.  An ALJ can satisfy the Commissioner’s step five burden by relying on VE testimony in

response to a hypothetical question that fairly sets forth Plaintiff’s limitations.  20 C.F.R. §§

404.1566(e), 416.966(e) (2014); *see also Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the

RFC to meet the demands of past relevant work or adjust to other existing work.  20 C.F.R. §§

404.1560(b)–(c), 416.960(b)–(c) (2014).  “In order for a [VE]’s opinion to be relevant or helpful,

it must be based upon a consideration of all other evidence in the record, and it must be in

response to proper hypothetical questions which fairly set out all of [a] claimant's impairments."

*Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker*, 889 F.2d at 50 (4th Cir.

1989)).  A hypothetical question is "unimpeachable if it adequately reflects a residual functional

capacity for which the ALJ had sufficient evidence."  *Fisher v. Barnhart*, 181 F. App'x 359, 364

(4th Cir. 2006) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal

quotation marks omitted).  The ALJ is afforded substantial leeway in the formulation of

hypothetical questions.  *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000).

When formulating the hypothetical question, the ALJ identifies the "physical and mental

limitations imposed by the claimant's medical impairment(s)."  20 C.F.R. §§ 404.1560(b)(2),

416.960(b)(2); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003).  The

hypothetical question need not reference each of the claimant's impairments or diagnoses by

name so long as it adequately reflects the limitations caused by those impairments.  *Brown v.*

*Astrue*, No. 10-1238, 2013 WL 937549, at *6 (D. Md. Mar. 8, 2013); *see also Chambers v.*

*Astrue*, No. 08-806, 2012 WL 4511051, at *2 (M.D.N.C. Sept. 28, 2012) ("'The hypothetical

question need not frame the claimant's impairments in the specific diagnostic terms used in

medical reports, but instead should capture the concrete consequences of those impairments.'")

(quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)); *Harris v. Barnhart*, No. 05-65,

2006 WL 1442792, at *11 (W.D. Va. May 25, 2006) (stating that the hypothetical question "need

not use specific diagnostic terms") (internal quotations omitted); *Osgar v. Barnhart*, No. 02-

2552-18B, 2004 WL 3751471, at *4 (D.S.C. Mar. 29, 2004), *aff'd*, 117 F. App'x 896 (4th Cir.

2005).  It is the ALJ's role to translate the claimant's medical impairments into functional

limitations from which the VE can determine whether work is available.  *See Smith v. Sullivan*,

733 F. Supp. 450, 452 (D.D.C. 1990) ("[A]s a practical matter, a recitation of the claimant's

various physical impairments is not going to be nearly as useful to the VE as the ALJ's specific finding of what are the claimant's actual disabling limitations arising from the physical impairments.").

During the administrative hearing in this case, the ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and RFC as of his date last insured. R. 22. Then, the ALJ asked the VE to (1) determine what percentage of the 1,400 light and 200 sedentary, unskilled jobs could be performed by the hypothetical individual, and (2) identify specific jobs in the national economy that existed in significant numbers, which the hypothetical individual could perform. R. 22–23. The VE responded that the hypothetical individual could have performed 55% of the light and 80% of the sedentary jobs noted by the Commissioner of Social Security under the "Grid Rules." R. 22. The VE identified representative occupations and their availability in the national economy, such as inspector (150,000 national and 450 regional positions), final assembler (150,000 national and 1,000 regional positions), document preparer (375,000 national and 1,200 regional positions), and addresser (190,000 national and 800 regional positions). R. 23. *See, e.g.*, *Hodges v. Apfel*, No. 99-2265, 2000 WL 121251, *1 (4th Cir. Jan. 28, 2000) (finding that the claimant's ability to perform 153 jobs defeated his claim for disability benefits); *Hyatt v. Apfel*, No. 97-2225, 1998 WL 480722, at *3 (4th Cir. Aug. 6, 1998) ("We previously have found that as few as 110 [regional] jobs constitute a significant number."); *Lawler v. Astrue*, No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that 75–100 jobs regionally does not undermine the ALJ's conclusion that the claimant could perform a significant number of jobs).

Based on a review of the record, the Court finds no error with the ALJ's determination that Plaintiff was capable of performing other work, that such works existed in significant

numbers in the national economy, and that VE testimony sufficiently corroborates to satisfy the burden of proof.

## IV.    Conclusion

Based on the foregoing, the Court GRANTS Defendant's Motion.

May 22, 2014                                                          /s/
                                                        Charles B. Day
                                                        United States Magistrate Judge

CBD/slr